15, 2-1-1-2, People v. James Utley. Both attorneys, step up and identify yourselves for the record. Good morning. Stephen Gentry from the Office of the State Appellate Defender, representing James Utley. It's Gentry? Mr. Gentry? Yes. All right. You're not on the briefs, but that's okay. All right. Good morning, Your Honors. My name's John Nowak. I'm the Assistant State's Attorney on behalf of the People. I am on the briefs. All right. That makes it easy. All right. Each of you will have about 15 minutes to argue. And from that, Mr. Gentry, you may save out some time for rebuttal. Thank you. All right. Before you start, I have a question. If we affirm the defendant's conviction and we do not find his sentence unconstitutional, should we consider whether a reduction in sentence is warranted under Rule 615B? Your Honor, certainly this Court is free to rule on any basis supported by the record. That is not an issue that Mr. Utley has. Well, are you prepared to argue that? I'm not, Your Honor. Okay. Should this Court wish to order supplemental briefing, we would respond. Let's follow up to that question. All right. Someone's convicted of an armed robbery. All right? And the minimum sentence if they're convicted of that class act is six years, up to 30. And then depending on their prior background, you know, they could have an extended term. Do you think that 615 would allow this Court to tell the trial court that we're remanding this for you to sentence this person to something less than six? Your Honor, I'm not sure what basis this Court could make such an order. All right. Okay. James Utley was sentenced to life in prison in this case for possession, for a nonviolent possession of a controlled substance under Illinois' habitual criminal act, based on his background of having two prior class acts convictions. This application of the act to Mr. Utley, a life sentence for this nonviolent possession of a controlled substance. Well, there were guns found too, correct? Excuse me? It wasn't just drugs. There were guns found as well. The life sentence was just for the drug conviction, Your Honor. Okay. So the guns were irrelevant to that determination. The sentence being challenged here is strictly the drug conviction. Class act is possession of a controlled substance with intent. That's correct, Your Honor. This sentence is so disproportionate to the nature of the offense that it shocks the moral sense of the community and thus violates Illinois' proportionate penalties clause, alternatively the United States Eighth Amendment. Mr. Utley, do you believe that the cases would support the argument that you're making that this is a nonviolent offense? I don't care about the guns. Okay. But can we honestly say this isn't a violent offense just because it involves possession with intent to deliver? It was about 100 grams together, wasn't it, the cocaine and the heroin? That's correct, Your Honor. The cocaine on which he was sentenced was around 76 grams. The heroin, which he was not sentenced on, was significantly less than that. And isn't it true that people are dying every day of heroin? Yes, that is true, Your Honor. How is it not violent if this is a substance that's wreaking havoc in the country? People die of cancer. They die of heart disease. Certainly there are lifestyle factors that play into those things. It is a stretch to call it violent. Certainly there are cases... I'm not talking about just the mere fact people die of heroin, but selling that he was convicted of possession with intent to deliver heroin. That's one of the... So, I mean, how can you say that's not violent if it results in death? I mean, there's cases where people have died from the sale of heroin to this other person. Well, Your Honor, I think that it does stretch the definition of violence. It's not traditionally seen as violent. It's increasingly less so seen as violent. He had several violent felonies in his background, though. Is that correct? He had one Class X violent felony. There was also another... There was a domestic battery. That's correct, Your Honor. There was an aggravated battery with a firearm. There was... That was the Class X. Okay. So, does the statute provide that each and every one has to be a violent offense in order to qualify under habitual criminal? The statute, as written, does not specify that... So, wouldn't that be a determination that the legislature would make if it found that habitual criminals should only be used for people who are convicted of their third violent felony? They do it with every other statute. They enumerate each and every one and what could be classified as that third offense or not. And according to the statute, this third offense qualifies for habitual criminal, right? As written, that is correct, Your Honor. So, wouldn't we, in effect, be overruling the legislature by saying, well, we think he got this one wrong, so we're just going to rewrite that in our own words? No, Your Honor. Two reasons. Number one, the Illinois Supreme Court has investigated the purpose behind this act, and while as not directly written into the act, the Illinois Supreme Court has determined that the purpose of the act is to punish people showing a propensity to commit violent felonies, violent Class X felonies. And so, while Mr. Utley has committed one prior Class X violent felony, that being his first one, he has not shown a propensity for committing violent Class X felonies. So, we're going to forget about the domestic violence conviction? That was not a Class X. I agree it's not a Class X. It's a violent felony, though, is it not? That's correct, but the act, of course. But we're going to ignore that. The act, of course, speaks to Class X felonies, and so that was not one of those. What was the hate crime and the tampering with the witness or juror, what was that all about? Your Honor, I'm not prepared to get into the details of those cases, but they were not Class X offenses. No, I understand. Don't you think that the background that's here with this particular person, that this might not be the test case for your position? Your Honor, I'm not here to bring a test case. I'm here to represent Mr. Utley. Mr. Utley certainly. What about the aggravated battery then? The one that he went to prison for 14, 15 years on. What was that case about? That case, and again, I do not have the details of that case. Other than what the offense was, certainly it involved the discharge of a firearm that struck another individual. Yeah, and he got 14 to 15 years, didn't he? And he served that time, Your Honor. Sure. He is now serving time on a life sentence. This Court has called to, in addressing this, compare the gravity of the offense with the severity of the sentence in the context of our society's evolving standards of decency. The severity of the sentence is the most severe sentence in Illinois, life sentence without parole. However, the offense, while certainly serious, a Class X possession with intent to deliver, certainly serious, this particular offense is not the most grave sentence. It's far from it. Sure. You even say in your brief that, you know, he should get something within the Class X sentence range, right? There's no question about that, Your Honor. You know, could you also maybe focus on your ineffective assistance argument? I know you've placed this as front and center, that the mandatory life is unconstitutional as applied to your claim. But what about your arguments regarding the ineffective assistance of counsel? Were you planning on addressing that? Because I'd like to hear about it. Certainly, Your Honor. I don't have much to add to what was written in the briefs. I can go over the arguments briefly and address any questions this Court may have. But as to those arguments, Mr. Utley asserts that counsel, ineffective assistance of counsel, for failing to sever the charges where, as to the armed habitual criminal charge, prior offenses were permitted to come in, which went directly to the other charges that he was facing that would not have been admissible as to those charges. So Mr. Utley's argument is that counsel was ineffective by getting these very prejudicial prior offenses in front of the jury as to these charges where they would not have otherwise been admissible. Do you have to show us that there would have been an entitlement to a severance? Let's say the way I read it was you were suggesting that if he had asked for a severance on the possession with intent to deliver versus the gun that was found in a separate location and the armed habitual criminal, that he would have perhaps been given that severance? That's correct, Your Honor, because of the prejudicial impact of these prior convictions. All right. And so do you think, though, how do you say that he was still – let's say that the court would have granted the severance. Does the State then get to choose which one they're going to go forward on? Or what if they make the decision to go forward on the gun charge? Or the – I'm not sure I understand. The State could have gone forward on any of the charges, but simply in separate trials had the severance been granted. So let's say the court would have granted the severance and that the possession went first. Is that what you're sort of suggesting, that there should have been a separate trial on the possession with intent versus having the UUW charges and the armed habitual criminal charge? That's correct, Your Honor. All right. So if the jury – in that instance, would he still have been convicted of a class act and would we still be where we are? Well, the – he could have been – the parties could have stipulated as to – well, the evidence still would have supported the class acts conviction is the answer to that question, Your Honor. You know, I think that what we're trying to get at here, and I don't know whether you're prepared to even argue this, but it is in the briefing, okay? The question is that if the gun charge wasn't part of the trial, okay, would that have changed the verdict? Your Honor, in this case where the charges came together – No, no, no. I mean, it answered the question. Yes, it would have changed the verdict, Your Honor. What? Yes, it would have changed the verdict. Well, how would that be? Because it seems that the evidence was so overwhelming as to the drug charge. You'd have to show some prejudice, wouldn't you not? Well, Your Honor – And where would that prejudice be? I mean, how would the jury be prejudiced by the gun charge when the evidence was so overwhelming? There really was no defense there. Well, Your Honor, the defense was Mr. Utley denied at trial knowledge and disavowed his statement as well. So there was an evidentiary question at trial, the veracity of his statement, which he claimed that he had not read. He stated that he had been essentially forced to sign that statement. And if you look at the statement, it's actually consistent with Mr. Utley. There are elements of it, I should say, that support Mr. Utley's assertion that this was something that he was forced to sign. Well, one thing was that there's definitely evidence that the mother – I don't know if they were actually married, or maybe they were separated – They were married, Your Honor. Okay. And they are married. I thought there was some testimony. But she was actually brought down to the station, correct? I believe that's correct, Your Honor. All right. And then there was also testimony. You're arguing two layers of ineffectiveness. Correct. One is the failure to ask to sever. I mean, I suppose if there was a severance, perhaps there could have been an argument for a lesser offense. It could have been a bench trial instead of a jury. But the mother was brought down to the station. And in his statement, or the police officers testified that he initially said he didn't want to talk to them. Correct. And then at some point they said he did want to talk to them? That is what the police said. He said that that was not the case. All right. But he also said that the fact that his wife was there was – he said he was threatened, that if he didn't give a statement, then she was going to be charged. And the children would be taken away. And the kids were going to be with DCFS. Correct, Your Honor. And the circumstances of him giving the statement, certainly there's no alternative explanation that makes any sense other than his account of that. And it's also notable that the statement claims that his wife actually knew nothing about the gun and the drugs, where the officer's testimony was that she was the one who, in fact, led them to those items in the home. Aren't these both, though, generally speaking, matters of the trial strategy, one, not to ask for a severance, and then two, to withdraw the motion to suppress? Your Honor, there's no beneficial purpose to be served by a strategy. While there may be in some cases strategic reasons for doing some things like this, that's not the case here. There's no – and if it was strategy, it was not reasonable strategy. So for those reasons, unless this Court has any other questions on that issue, I would just like to briefly address the State's filing of People v. Harris as additional authority with regard to the first issue and say that this Court should not be swayed by the filing of this case. It was a case that was decided before the State filed its brief. It was a case that did not announce a new rule of law, the rule of law that it is being cited for, the need for more – the need for a as-applied challenge to be raised first in a circuit court. That general rule should not apply here. This case fits within the exception where the record is abundantly clear exactly how the habitual criminal act is being applied. It's being applied by giving them a life sentence. Your Honor, I have one question. Thank you. One area that you haven't discussed here, and this is a serious case, something that I think you should discuss. In fact, I think it would be ineffective not to discuss. And that is that in this case, the State offered the defendant a plea deal of only 14 years, and he later was sentenced to life without parole. I mean, isn't it true that when a sentence is many times greater than that offered during plea negotiations and there's a gross disparity, may warrant a reduction in sentence? Your Honor, that absolutely should be considered here in terms of the gravity of the sentence and comparing it to the severity of the crime. The State did make that offer, and it's also notable that that 14-year sentence would have been served at 50%. So the State did offer essentially a seven-year sentence in this case. That speaks to the gravity as well as the extremity of the sentence that was issued in this case. And I would also note that the comments of the trial court below, where the court indicated, said it gives this court no pleasure to order this sentence, spoke to the court's displeasure with being. I think, you know, I don't know, there's a lot of ways to interpret that. Like Justice Gordon just said, imposing a mandatory life sentence, you know, in this particular case, you know, the court said it doesn't give me any pleasure to send you to prison for the rest of your life. I mean, I don't know how much we can take from that. It's one more thing, Your Honor. Yeah. Okay. If there are no further questions, I will yield to the State Justice. Just one thing. When this whole thing about the 14 years was discussed, okay, his attorney spoke to, Mr. Utley's attorney spoke to him about the offer. And wasn't there a statement on the record that he was rejecting that? And then there was further comment that, you know, if he's found guilty of a Class X,  there was no misunderstanding at that point. All right. And then also the State was agreeing that they would have to reduce the pending charge, which was a Class X, to a Class I. That is also correct, Your Honor. Otherwise, yeah. So, okay. Thank you. All right. Mr. Nowak. Mr. Nowak, doesn't it defy the purpose of the Habitual Criminal Act when you sentence somebody on a drug case to life in prison? No, Your Honor. Tell me why. It is the law. The law. Well, I got that. Yes. That's why we're here. The Habitual Criminal Act makes no exception for a Class X offense of possession of a controlled substance with the intent to kill. With intent to distribute. In fact, this Court has faced this issue twice recently, where a defendant made an as-applied challenge to a natural life sentence under the Habitual Criminal Act after being convicted of a Class X based on PCS with intent. What was the amount of drugs in the other two cases? The other two cases, that's Collins from 2015 and Fernandez from 2014. It was more than in this case. It hit in the thousands of grams. I think one of them did hit a thousand, and this one total is a hundred. But there's no difference there because once you hit that Class X level, you qualify. Well, there clearly was a difference here because this guy was offered 14 years. He'd do seven, six and a half, and be out. So there is a little bit of a difference when you're looking at a thousand grams on the state's willingness to reduce something to a servable amount of time rather than natural life. Admittedly, Your Honor, that offer was made to the defendant, but also admittedly, this counsel had to admit, it's on the record, it was clear to this defendant what his gamble was here, is that he could take the pleading to a lesser offense and to 14 years in prison, or what he decided to do, knowing full well that he was facing natural life in prison if he went to trial. And he made the conscious decision to go to trial, knowing full well. To exercise his constitutional right to a trial, Mr. Nowak, that doesn't mean that we whack someone with natural life in prison when they exercise their constitutional right. Correct, Your Honor. And it's not whacking him. It's not damaging him. I think he would disagree with you. He disagreed with the plea offer. He knew that... So this isn't really a jury tax case? A jury tax? Sure. Oh, no, Your Honor. No, you offered 14, and then he took his jury, and then he got life. That was required by the statute. And so the issue becomes, he knew full well, he was not in the dark, that he was facing a natural life in prison, potential sentence for conviction in this case. And he went to trial. That's his choice. That's his choice to go to trial. He knew. He didn't go to trial thinking, oh, I've been told I'm going to get it reduced to a Class I, even if I go to trial. He knew if he goes to trial, it's going to be for that Class X offense, and he knew the result would be. Let's talk about the ineffective assistance. Okay? Now, why wasn't this lawyer ineffective for not moving to sever the possession with intent? He wasn't ineffective because that is a trial strategy decision. And this Court, and another two cases from this Court, recent cases, where this Court held that the decision not to seek a severance of gun charges versus other charges is a matter of trial strategy. It is, but doesn't that strategy always have to test, reach, or meet the reasonableness test? Well, it has to meet whether it's a reasonable trial strategy. It has to be a reasonable strategy, and doesn't it depend on the facts of the case? Yes, and the facts of this case are substantially similar, if not identical, to Fields from 2017 and Poole in 2012, where the same argument was made. And this Court, in both cases, rejected it at simply looking at this trial strategy. Well, those cases were reviewing whether the decision was ineffective, but they don't actually appear to be like this one. For example, this is a case where the defendant, if he went to trial and was found guilty, was going to face life in prison. Okay?  They weren't life in prison cases? No, Your Honor. All right. So the lawyer in this case knows full well that his client is going to go to prison or life, as opposed to the 14 years he was being offered, if he's found guilty of the possession with intent, right? Yes, Your Honor. How is it reasonable not to ask the Court to sever the drug from the gun charges and the armed habitual charges, which are going to throw in front of the jury his two convictions, one which is a violent offense and one is another drug offense? The reasoning in Fields and Poole applies equally here, even though the potential sentence wasn't as severe in those cases. And that's because this is the most severe sentence that you get in Illinois now. Yes. So why is it reasonable for the lawyer not to make a motion to sever and then proceed with a possession charge, take a bench trial, and remember this is the judge that felt, what were his words? You know, I take no pleasure in sentencing you to life. And the state, on the other hand, has offered him 14, which is going to be like 7. So how is that lawyer acting reasonably when he may be able to save his client from natural life? Because just as in Fields and Poole, this is an all-or-nothing strategy. And this Court endorsed that strategy in those cases. Where do we get in this record that this was an all-or-nothing strategy? The same place this Court got it in Fields and Poole, which is to say it's not in the record. How could this be an all-or-nothing strategy when the all is going to get you life? Because there's, when this Court went through the same analysis in Fields and Poole and came to the conclusion in both cases that an all-or-nothing strategy is a reasonable trial strategy for deciding not to file a motion to sever, the reason is the same. It's because if you do it piecemeal, say that the gun possession one comes first. If you do it piecemeal, that's your, you're saying you'd do the gun charges first. I'm not sure how they would do it. But the reasoning behind the all-or-nothing strategy. Let's figure it out then with the gun charges first. They weren't class X, right? Correct. Okay. So he doesn't face life in prison if you go forward on the gun charges. That's correct, Your Honor. All right. So we get past that. Now there's no life. Okay. Now we're at the possession with intent. Take a bench trial. The judge doesn't want to give him life. The state thinks it's only worth 14 and that's really seven, so the judge can find him guilty of a lesser offense. And then he doesn't face this life in prison that we're talking about. So how is this lawyer so reasonable? Because with the all-or-nothing strategy that this Court has endorsed, and this Court has not held to the opposite, by the way, because if we go to trial first on the gun charges, drug possession with intent, those are set aside for later. And he gets an acquittal on the gun possession charges, keeping in mind that the evidence of constructive possession in both cases is substantially the same. So he gets an acquittal on that gun charge. Now, with the all-or-nothing strategy, why the Court says that it's okay to do that is because now perhaps the state gets to tighten it up, tighten up their case. There are some missing points here. They're going to bring in some extra evidence that they had that they didn't think they were going to need for the original case. They bring it in, and then he gets convicted on the Class X PCS where he's facing a natural life. For sure we are going to see an ineffective citizen's counsel claim on appeal. Any lawyer worth his salt is going to take a bench trial. They're not going to go to a jury. And if the gun charges, under your scenario, if the gun charges are gone, they can't even be used in this other trial. Can they? Not his prior conviction on the gun offense, but here's what would come in at that hypothetical bench trial where he's facing a Class X, and if he's found guilty, he will be found guilty and get that natural license. At this hypothetical drugs-only second trial, the evidence is going to come in almost identically the same. And, in fact, it's going to show right away. But the gun's coming in. Under your scenario, there was an acquittal. He was found not guilty. Because we cited to Robinson an Illinois Supreme Court case. And there, of course, in dicta, but the court in Robinson explained that guns, gun possession can be indicative of showing intent to deliver a controlled substance. That that's part and parcel of the drug game, of their narcotics dealing is to have guns for protection as part of that. So the firearms that are recovered are likely going to come in under Robinson. So the trial judge is going to hear that, yes, he also possessed weapons at the time he possessed all of the heroin and cocaine and all the packaging materials. The guns are coming in. Also coming in, if he testifies at trial. Why are the guns necessarily coming in when it's his wife? And the testimony is uncontradicted. A police officer said to her, is there anything else here that we should know about? And she directs them to a gun. So why did that come in? I mean, under your scenario. And that's uncontradicted. It was your witnesses who said she brings the police to the gun. Nobody else. Isn't that uncontradicted? Yes. She says, look at the south closet. This is all in the same bedroom, by the way. And in that bedroom, we've got the men's clothing in the north one, which is where the drugs were, but also his prescription bottle with his name on it. We know he lives there. We know he constructively possesses this. In the front room, when he opens the door at 630 in the morning, he's wearing a T-shirt and boxers. He lives there. In that front room, they find two bank statements with his name and his wife's name and the address of that location in Streamwood. They also find his Social Security card with his name on it. This man, James Utley, possessed the contraband in the master bedroom. So, yes, when there is a possession with intent to deliver, if there are firearms that it's also constructively possessed, they get to come in at trial to show intent to deliver. Those come in. He testifies at trial again, just as he did here. No, the first 98 conviction doesn't come in, but the 2005 conviction, felony conviction for delivery with a controlled substance, comes in. If he testifies. If he testifies. And presumably, he would want to. And that would come in as well. So all that is missing in this hypothetical second guns only trial is that 1998 conviction. That is it. Everything else is the same. And that is why there is no prejudice. If defendant had filed a motion to sever, and they had been severed, and we had gone down this path, all that extensive evidence of construction possession would come in, including his statement that he testified. In courts, can trial judges like juries exercise lenity? Well, they can, can't they? Isn't that what's in the case law? They can, because there wouldn't be a lesser included offense there. But that's pretty far down the road. Okay. I want to ask you about Edwards. Okay. How do you tell us that if a court is asked to sever the gun charges from the possession charge, that that's not here once it's requested? If it's requested, it's an abuse of discretion standard. And we have an argument. Is that what Edwards said? Yes. It's an abuse of discretion standard, and I searched for it yesterday. Didn't Edwards say that it was an abuse of discretion there? Yes. Okay. All right. It's not an automatic. But then again, Your Honors, this Court faced, although the sentences here are more severe here, the legal issue is the same as in Fields and in Poole. And this Court rejected the argument that this was anything other than trial strategy. But again, Your Honors, even if he had filed it, there was no prejudice here, again, because of all the evidence of construction. You say this was an all-or-nothing strategy, and that's how you distinguish the cases. But I don't think there's anything on this record that in any way supports your suggestion that this lawyer in this case was using an all-or-nothing strategy. Your Honor, there is nothing in this record that the opposite is true. And it is defendant's verdict. When your client is facing life and you have a way possibly to get a reduced charge of possession with intent to deliver, I don't think that's reasonable. His lawyer knew. He knew he was facing life in prison. But it's the lawyer that's supposed to be advising him, and sometimes the lawyer can't really convince that client, you know, you should do this or that. So. The result here. Poole and the other case, Fields, those cases actually show it was an all-or-nothing. And there's nothing here to show that this lawyer was doing this as an all-or-nothing strategy. Your Honor, I beg to disagree. I don't see anything in Fields and Poole that shows that the trial counsel made a claim on the record that I have made a decision and I am not going to seek motion to sever. There's nothing. There's an absence, just as there's an absence in this case of what trial counsel's particular thinking was. This is identical to Fields and Poole. No, it isn't, because once again, Fields and Poole were not cases where the client was facing mandatory life in prison. That alone distinguishes those cases from this one. Very good, Your Honor. I mean, I think it does. I think you can distinguish them. And I do think that there's some things in Poole and Fields where there was a suggestion that the lawyer was going to try this all-or-nothing strategy. I'm not sure that this lawyer was really going for that. Maybe he was. But again, Your Honor, just to go back, there would be no prejudice for the second problem. He hasn't shown that there was a chance that the result would be any different if these were tried separately. And I just did go through that with the court as to what would have come in on the case. Well, if the judge was reluctant to give him life, that's their spin on it. There's another spin. If you have a judge that, you know, is familiar with the case and he's reluctant to give life in prison, he might, after a bench trial, find him guilty of a Class I so that he doesn't or she doesn't have to sentence this particular person to life in prison. Your Honor, the court's comment is, as you've noted, could be read in several ways. And certainly, just the humanity of the judge is that the judge doesn't walk into court every day and want, desire, and seek out to sentence people to natural life. Of course, that's a heavy weight that the trial judge has to impose. But it is required in this case. And so the fact that he expressed that humanity that he took no pleasure in is something that should be encouraged and admired. Because if he had said the opposite, that would obviously have a whole different implication. Do you think there's any authority under 615 for this court to tell a trial court that they can reduce a sentence like this? With all due respect, Your Honor, no. It is required by the Official Criminal Act. There is no discretion here. The Illinois Supreme Court possesses that supervisory authority that this court and the circuit court does not. This court must do it. So under 615, while this court does have the general authority to reduce a sentence, that is when it is a discretionary sentence, not where the particular sentence is mandated by law as it is here. What case supports this? Again, this wasn't briefed, so I don't have a case at the top of my head on this. But just reading 615 and also reading the Illinois Supreme Court rules as far as who possesses, which court possesses supervisory authority, that requires the Illinois Supreme Court. I told you there is no case that says that. That the appellate court could exercise a discretion under 615b-4 to violate the required standard under the Official Criminal Act? I'm just saying that there's no case to support what you're saying. It may be true. I'm not saying it's not. I don't think it is, but it may be true. But I'm just saying that there's no case that says that when there is a mandatory sentence, this court does not have discretion. I'm happy to brief that issue, Your Honor. If this Court would order the parties to brief that, I am almost certain that there is, when the statute requires a particular sentence. You know what? You give it to us as additional. I think that there's cases, Mr. Nowak, that actually would be mandamus actions. Yes. Where a trial judge or I don't know about court review, but I think there's mandamus cases out there. Yes. That indicate that a trial judge cannot reduce a sentence that's otherwise mandatory under the legislation. I'm fairly certain that that might be the closest thing you'd come to. Yes. I don't think 615, I don't think it allows a reviewing court to reduce what would otherwise be a mandatory sentence. I think there are mandamus actions that have been held where a trial judge decided not to sentence under the Class X Act for some reason or other. And maybe there was what appeared to be a valid reason, but I think that's where the, you know, where it would take us. So if we decide to ask for further briefing, we will. We're not doing that at this time. We haven't really discussed it. Thank you. But isn't it true under current federal law that the amounts in this case are so small that even after a prior drug conviction, the defendant would face no mandatory minimum? I can't speak to the federal law here, Your Honor, but here we're talking about the Victim of Criminal Act, and you have to have a series of prior Class X offenses, convictions. Two prior Class X offenses, and he has had those. And as far as the as applied goes, we're getting back to that just to finish up on that. This defendant is literally an habitual criminal. He has committed crime after crime. As soon as he gets out, like after 98, up until 98 he committed several crimes. The trial court went through them. He has that first Class X in 98. He gets out. He's on parole for that one. He commits the 2005 Class X offense, his second one. Now he's going to be a habitual criminal for the third. He commits that one when he just gets out of prison on the 98 one. Commits the 2005 one. He just gets out of prison, and he commits the two Class X offenses in this case. This defendant is literally an habitual criminal. That is why this statute has been in place for people just like him who commits, for over 20 years he's been committing crimes, habitually criminal crimes. And as far as the as applied goes, this is not a defendant for whom lenity should be sought in this case. Where as applied, it applies to him. He's an habitual criminal. In fact, he fled when this guilty verdict came in. He was not there. It's in the record. They talk about it at sentencing. The rest of the court went out for him. They find where he's at. He's with his son. And it takes a while to get him to surrender. And when he's in the car with the officers after he finally surrenders, he talks about how he'd been on his way to Indiana, and he's lucky he didn't run into anyone because he was really upset and was going to take his rage out on someone. And he told them they were lucky my son was here because it wouldn't have been so easy to take custody of me at this time. This man is an habitual criminal. The sentence is fair. It's required by law. And if this court is going to rule on the as applied challenge despite the fact there's no evidentiary hearing and no findings of fact in this case, this court should find that this sentence was constitutional as to this defendant. Now, the defendant didn't make another ineffectiveness claim about the suppression. But if the court would like me to address that, I'd be happy to. But otherwise. No, but the record does indicate, doesn't it, that the wife was there. He was brought in for whatever reason. And then he actually initially said, I don't want to talk to you. Is that uncontradicted? That only came from defendant's testimony. No, I think you're wrong, Mr. Roek. I think one of the detectives said he told us he didn't want to talk to us. Yes. When they first got there, he's like, I don't want to talk now. But the part about the wife, there's no testimony from the officers about her.  We don't know if she's there or not. It's uncontradicted, though, that the detective said that he said he didn't want to talk to us. Then they brought him his lunch at whatever time. Yeah, it was like 1130. It was around noon. It was well past dinnertime. No, no. It was around 1130. I mean, they got to his house at 6 o'clock. So it was around 1130. They come back in. They bring him his lunch. And he says, I want to talk to you guys. And they're like, okay. And they let him finish his lunch. They come back in. And he gives this statement. Well, again, moving to suppress, I guess you would argue, is always or generally a matter of trial strategy. But here you've got a defendant who's facing life, no question about it, and his lawyer withdraws the motion to suppress. Now, whether it's going to be successful, I don't know. But. On that point, though, he didn't just, the counsel didn't just withdraw it. The trial judge here made the cleanest record possible. And, in fact, after the trial, counsel sought to withdraw it. The court made clear with the record, on the record, with defendant. He said, the court said the following, Mr. Utley, do you want your lawyer to withdraw those motions? Defendant, yes. The court, by doing so, you're not able to refile them. Do you understand that? The defendant, yes. The court, leave to withdraw motion to suppress statements and motion to quash arrests is granted. I don't understand. The judge said that, according to his rules, once it's withdrawn, we're never going to hear it again. He wanted, that was, he was making that clear to Mr. Utley, just to make sure that Mr. Utley was agreeing with this strategy. There's no rule that would ever forbid a judge from entertaining a motion later, is there? No, there's no court rule that says that. That was the judge's rule. That was the judge's ruling. But the point of that is that the judge admonished the defendant, on the record, and said, do you agree with this strategy to withdraw it? And the defendant said, yes. And it's well established that a defendant cannot ask for something at trial court and then on review claim that it's error. And defendant, in a reply brief, cites this Wilborn case that says that it's possible to make an ineffective assistance claim even though defendant agrees to the action at trial. But, yes, it was rejected in that case. In Wilborn, the defense counsel made a decision not to call a particular witness, and the defendant agreed on the record with that strategy. And they said, that's enough. It's clearly strategy. And that's what happened here. And, again, even without that statement, there was more than enough evidence proven guilty. For these reasons, we ask that this Court affirm his convictions and his sentence. All right. Mr. Gentry, do you want to brief your reply? Just a couple of points in response. I would point out, as to the ineffectiveness claims with regard to severance, the State's argument that the gun would come in as proof of intent to deliver. In this, certainly there may be cases where that is the case, but it's not an automatic per se rule. And in this case, where the gun was found separately from the substances, and where there was adequate evidence of intent to deliver with the evidence recovered with the substances in terms of scales and bags and things of packaging material and things of that nature, the gun would not have come in as to the drug charge in this case. As to the prejudice argument, it's worth noting that the jury in this case deliberated for several hours, as well as sent a note to the Court requesting a definition of reasonable doubt. As to the sentencing argument, certainly the State, while requesting, again, that this Court not review because of a lack of record below, has cited no facts that are missing that are necessary for this Court's review. Certainly there are no facts that are missing here that were present in previous reviews of this issue in Fernandez and Collins. There's no evidence that those cases were – that those challenges were raised below there or that facts were needed from such a challenge. The State says that there's no difference in this case than Fernandez and Collins, but that is not true. The amount of substance in this case is such a tiny fraction of the amount of substances recovered in those cases. There the courts were relying on, as well as previous decisions, the danger that poses to society by drug trafficking. The amount of drugs in here at issue in this case, a small bag inside a box, inside a cooler, at the bottom of the closet. Mr. Otley is not a trafficker, as we understand the term to be used in these other cases. The amounts of drugs recovered. Were they packaged for sale? There was packaging material there for low-level sale, not for the type of – But is there any study out there that says low-level sellers don't cause as many deaths as the guys selling more or distributing large quantities? Well, certainly, one would imagine that the damage would be at a commensurate lower level than that posed at the – I don't know. I think one death is as bad as anything else. Your Honor, you get no argument from me on that. I know. I don't see the reasonableness of an argument that the low-level seller, it's okay. It's not okay, Your Honor, but that does not make Mr. Otley El Chapo. It doesn't make him one of these types of people. He's a husband. He's a father. He's had a lot of problems. He's had a difficult start in life, and certainly he has had recidivism problems. He is not the most egregious offender. This Court should find that his sentence is grossly disproportionate to the most serious offense. Thank you. Thank you. Thank you both. The case was well-argued and well-briefed. We are going to take it under advisement, and now we're going to take a short recess to have a new panel.